### GREAT SOUTHERN LIFE INS. CO. v. AKINS.

No. 1882.

Court of Civil Appeals of Texas. Waco.

May 6, 1937.

Rehearing Denied June 10, 1937.

Vinson, Elkins, Weems & Francis and Fred R. Switzer, all of Houston, for appellant.

Martin & Allred, of Hillsboro, for appellee.

ALEXANDER, Justice.

This suit was brought to recover under the double indemnity feature of a life insurance policy, as the result of the accidental death of the insured. The policy, on the front page thereof, provided for the payment of the sum of $1,000 to the beneficiary upon the death of the insured. There was attached to the policy a supplemental agreement, which was, in part, as follows:

"SUPPLEMENTAL CONTRACT Attached to and Forming a Part of Policy No. 334579.

"DOUBLE INDEMNITY ON ACCIDENTAL DEATH.

"IN EVENT OF DEATH FROM ACCIDENT THE COMPANY AGREES TO INCREASE THE AMOUNT PAYABLE HEREUNDER TO

"TWO THOUSAND DOLLARS ($2000.-00)

"upon due proof that the death of the Insured occurs during the premium paying period, * * * provided such death results solely from bodily injuries, caused directly, exclusively and independently of all other causes by external, violent and purely accidental means, and provided also that such death * * * shall not be the result of an intentional or unintentional homicide due to the act of a sane or insane person * * *."

The insured was killed by being shot with a pistol. The insurance company paid the beneficiary the $1,000 as provided for on the face of the policy but declined to pay the extra $1,000 for accidental death. This suit was brought to recover the extra $1,000. Judgment was for plaintiff, and the defendant appealed.

It will be noted that the policy provides that the company will not be liable for the payment of the double indemnity in the event the death of the insured "be the result of an intentional or unintentional homicide." The first material question to be determined is whether or not the insured's death was so caused. The evidence discloses that insured, while driving an automobile on a public highway, collided with an automobile driven by one Bill McInturf. As the result of the collision, an argument ensued and McInturf went to his automobile and secured a pistol. While insured's son was scuffling with McInturf in an effort to wrest the pistol from him, the insured attempted to assist his son and was shot. It appears that the gun was discharged three times while it was still in McInturf's hand and while the insured's son was holding McInturf's arm. One of the bullets struck the insured and killed him. The record

is not clear whether the bullet that struck and killed the insured was fired directly into insured's body, or whether it first struck the pavement and then ricocheted to insured's body. In view of the judgment of the lower court and appellee's contention, we will assume that the bullet struck the pavement first and then glanced to the body of the insured. Standard Dictionary defines "homicide" to be "the killing of any human being." "Homicide includes both intentional and unintentional killing. It is justifiable when committed by an officer in the discharge of duty * * * excusable when committed accidentally or in self defense, felonious when committed maliciously * * * or negligently as in manslaughter." Article 1201 of our Penal Code provides as follows: " 'Homicide' is the destruction of the life of one human being by the act, agency, procurement, or culpable omission of another." Article 1228 of our Penal Code provides as follows: "Homicide is excusable when the death of a human being happens by accident or misfortune, though caused by the act of another who is in the prosecution of a lawful object by lawful means." It is clear from the facts above stated that insured was killed by McInturf, and therefore, under the foregoing definitions, such death was the result of a homicide regardless of whether the killing was accidentally or purposely done, or whether it was intentional or unintentional. This being true, the beneficiary was not entitled to collect the extra benefits provided for in the supplemental contract.

Appellee contends that the provisions contained in the supplemental contract to the effect that the company would not be liable for double indemnity if insured's death "be the result of an intentional or unintentional homicide" is in violation of the provisions of R.S. art. 4733, which provides in effect that no policy of life insurance issued in this state shall contain a provision for any mode of settlement at maturity at less value than the amount insured on the face of the policy. We do not consider these limiting provisions in violation of the statute referred to. The face of the policy in this instance bound the company to pay only the sum of $1,000. The limiting provisions here complained of do not purport to limit the company's liability as to that item and therefore are not in conflict with the statute in question. Great Southern Life Insurance Co. v. Cunningham (Tex.Com.App.) 97 S.W.(2d) 692. Furthermore, such limiting provisions are part of the very paragraph creating the right to double indemnity, and instead of providing for a different mode of settlement of a right previously granted, they constitute a carving or taking out of a part of what otherwise would have been the grant so that the insurance company never obligated itself to pay double indemnity in those cases where the death was the result of homicide. Travelers' Ins. Co. v. Harris (Tex.Com.App.) 212 S.W. 933; Coyle v. Palatine Insurance Co. (Tex.Com. App.) 222 S.W. 973, 975.

The judgment of the trial court is reversed, and judgment is here rendered for the defendant.