**MARKWELL v. GALVESTON COUNTY.**

No. 11680;  Motion No. 13232.

Court of Civil Appeals of Texas.  Galveston.
Feb. 15, 1945.

Rehearing Denied March 22, 1945.

Russel H. Markwell, of Galveston, in ·pro. per.

Chas. H. Theobald, Co. Atty., and Emmett F. Magee, Asst. Co. Atty., both of ·Galveston, for appellee.

GRAVES, Justice.

This agreed statement furnishes, in sub--stance, a sufficient background for the con--sideration of the appeal at bar, towit:

"This is a suit to recover compensation for services rendered by appellant, as Spe-·cial County Judge of Galveston County, Texas, from August 21, 1940, to January 3, 1941. The facts are agreed, as are the two questions involved, i.e., (1) Whether a special county judge of Galveston County, ..elected by the practicing attorneys, pursuant to the applicable statutes, is entitled to compensation for his services, and (2) if ·so, the method of computing such compensation. The facts as agreed by the parties are in substance as follows:

"That at least three days prior to Au-·gust 21, 1940, the Hon. E. B. Holman, regu-:.lar County Judge of Galveston County, be-.came seriously ill, as a result of such ill-:ness was confined to his home, and was un-

able to perform any of the duties of his office from August 21, 1940, to January 3, 1941. On August 21, 1940, and thereafter from term to term, until December 31, 1940, Russel H. Markwell, a duly licensed and practicing attorney of the Galveston Bar, was elected Special County Judge of Galveston County by the practicing attorneys present at such election. Such elections were in strict compliance with the provisions of Article 1934, and Articles 1887 to 1893 of the Revised Civil Statutes of 1925. Judge Markwell served continuously and without interruption, as Special County Judge, from the day of his election, up to and including the 31st day of December, 1940. After the termination of his services, Judge Markwell filed and presented to the Commissioners of the County Court, and the Auditor of Galveston County, a claim for the services rendered as Special County Judge, the total amount of said claim being * * * $1,-730.33. On October 9, 1940, during Judge Markwell's tenure of office, the County Auditor of Galveston County made inquiry of the Attorney General's department as to whether or not salaries had to be paid to both the special county judge, and the regular county judge who was absent. The Attorney General's office answered such inquiry by letter dated October 10, 1940, enclosing three opinions, which had previously been rendered by such department, in which it was held that both the regular county judge and the special county judge were to be paid, and the special county judge's salary was to be calculated by taking the regular county judge's annual salary, dividing it by 365, and multiplying the result by the number of days the special county judge served. At the termination of his services, Judge Markwell filed a claim for compensation based upon the number of days intervening from the date of his appointment until the last day of his services. The County Auditor took the position that some deduction should be made for intervening Sundays and holidays (amounting to nineteen Sundays and five holidays), and on January 25, such Auditor wrote the Attorney General's department for an opinion as to whether or not a deduction should be made for such holiday, a part of such letter reading as follows:

" 'From the opinion received, I understand that the Special Judge is to be paid for each day that he actually served, and

the compensation to be arrived at, as stated on page 2 of Opinion 0–722. As Mr. Markwell rendered his bill for every day, including Sundays and holidays from August 21, 1940, he is requesting payment not for the days that he actually served, but for every day intervening between the first day of his appointment until the last day.'

"By an opinion considered and approved in limited conference, and dated May 1, 1941, the Attorney General's Department overruled its previous opinions 0–722, 0–1234, and 0–1529, and instructed the auditor that there was no statute permitting compensation to be paid to a special county judge, who held office by virtue of having been elected by the members of the bar, Article 1934, R.C.S. Such opinion in substance holds that the provisions for the pay of special judges of the County Court, apply only to special judges either appointed by the governor, or agreed upon by the parties. This is an interpretation of Articles 1933 and 1934, contrary to the interpretation made in the three previous opinions referred to. The County Auditor and the Commissioner's Court of Galveston County, pursuant to the Attorney General's opinion, refused appellant's claim. Appellant has received no compensation whatever for serving as special county judge of Galveston County, Texas, from August 21, 1940, to December 31, 1940, although during such period, he was the only person performing services as County Judge. It is further stipulated that his services were reasonably worth $13.01 per day (being the amount claimed), and that the Commissioner's · Court and Auditor of Galveston County, Texas, had actual notice that he was so serving.

"This appeal involves an interpretation of Articles 1933, 1934, and Articles 1887 to 1893, inclusive, and Article 6821. Judgment was rendered for the defendant in the court below, based upon the conclusion of the trial court that there was no statutory authority for the payment of special county judges elected by the attorneys; the plaintiff excepted and gave notice of appeal."

█ Recognizing this to be such an "agreed statement as will enable the appellate court to determine whether there is error in the judgment", within the purview of Rule 378, Texas Rules of Civil Procedure, and proceeding to make a determination, this court holds there was er-

ror, basing its conclusion, in the main, upon these considerations:

(1) The Attorney General's first opinions, that is numbers 0–722, 0–1234, and 0–1529, rendered May 27, 1939, August 12, 1939, and December 19, 1939, respectively, holding that all special county judges were entitled to receive the same compensation as regular county judges, seems to be the better, if not the inevitable, construction that should be given our civil statutes, Articles 1933, 1934, 1887 to 1893, both inclusive, and Article 6821, along with Articles 552 to 557, both inclusive, of the Texas Code of Criminal Procedure, when all such statutes are considered and construed together, rather than his later opinion, No. 0–3091 of May 1, 1941, specifically overruling by name such first three former ones, and holding, as if upon a construction that such Article 1934 stood by itself, that there was no statute permitting compensation to be paid to a special county judge, who held office by virtue of having been elected thereto by the members of the bar.

█ (2) All the statutes named in paragraph (1), civil and criminal alike, seem clearly to be in pari materia, dealing as they do with the same general subject, hence, under well settled authority, they should be considered and construed together, with a view of applying a consistent legislative intent to them all in so far as they relate to each other, if they are reasonably susceptible of that interpretation; United States v. Arizona, 295 U.S. 174, 55 S.Ct. 666, 79 L.Ed. 1371; United States v. Jefferson Electric Mfg. Co., 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859; 39 Tex.Jur., pages 253 and 257; Wintermann v. McDonald, 129 Tex. 275, 102 S.W.2d 167, at page 171; Trimmier v. Carlton, 116 Tex. 572, 296 S.W. 1070, at page 1078; Roby v. Hawthorne, Tex.Civ.App., 84 S.W.2d 1108, (error dismissed); Holland v. Harris County, Tex.Civ.App., 103 S.W.2d 1067, affirmed 129 Tex. 118, 102 S.W.2d 196.

█ (3) It is true that, if Article 1934, providing for the election of a county judge by the bar, be isolated from all the other statutes referred to, and be considered as dealing with a subject entirely foreign to any of them, it is an easy transition to arrive at the view taken by the Attorney General's last opinion, No. 0–3091, as well as that of the trial court herein, which followed it; because there is no express pro-

vision therein providing for compensation for a special judge selected in that manner.

Its terms, however, do permit a county judge "to be elected in like manner as is provided for the election of a special district judge", etc.; so that, when the provisions of such other statutes are read into it, it seems clear that not only was a special county judge made a judicial officer of the State, but he was endowed with all of the authority of the regular county judge while in the discharge of his duties; in other words, he was expressly made the same kind of an officer while in the discharge of such judicial duties as all the other judges, all of whom, without exception, were given compensation for their services.

■ (4) Indeed, it would seem that under original Article 1132 (now 1933), as first enacted in 1895 and amended in 1897, all county judges—however selected—were entitled to compensation; that is, upon its face at least, from 1897 to 1925 that old Article 1132 appeared to have provided compensation for all special county judges, and to have been during that period so construed and administered. That statute was then reenacted under its present number 1933 in 1925, substantially in its stated prior form, which fact itself strongly indicates, it seems to this court, that the Legislature intended a continuation of that compensation and construction.

(5) The construction just indicated in paragraph (4)—so far as has been made to appear in this record—so continued from 1925 to May 1, 1941, when for the first time that construction was repudiated by the Attorney General in his referred to opinion, No. 0–3091, supra.

■ (6) If, despite its compatible position with those other cited statutes in the judicial set-up, an ambiguity can be said to arise in amended Article 1934 because of its omission of an express recitation for pay to the special county judge elected by the bar, then its emergency clause, its caption, along with the body of the act itself, should all be looked to in determining the legislative intent in its enactment; Anderson v. Penix, 138 Tex. 596, 161 S.W.2d 455; Popham v. Patterson, 121 Tex. 615, 51 S.W.2d 680; Trawalter v. Schaeffer, Tex. Sup., 179 S.W.2d 765.

■■ When that is done, it indisputably appears that such amended act was merely intended to correct a deficiency in its predecessor—that is, a failure to provide for the selection of a county judge, should the regular judge be sick or unable to serve, as distinguished from his being merely disqualified—and nothing more.

Wherefore, that having been the sole objective of Article 1934 as it now stands, the one fact that it provided for the appointment of a special county judge by the practicing attorneys at the bar, rather than by the Governor, or by agreement of the parties, would seem to furnish no sufficient warrant for the holding that the Legislature thereby intended the compensation-provision of the general statutes to apply only to judges selected by the Governor, or by the parties. It is a recognized rule in such a situation that, when new provisions are added to a legislative act, both the old and the new should be construed together. Cernoch v. Colorado County, Tex.Civ.App., 48 S.W.2d 470; Great Southern Life Ins. Co. v. Cunningham, 128 Tex. 196, 97 S.W.2d 692; Manhattan Life Ins. Co. v. Wilson Motor Co., Tex.Civ.App., 75 S.W.2d 721 (error refused); American Surety v. Axtell, 120 Tex. 166, 36 S.W.2d 715; 39 Tex.Jur. 160; 39 Tex.Jur. 167; Article 10, No. 6.

(7) The authorities relied upon by the appellee-County as upholding the trial court's judgment in this instance, all appear to have been cases wherein public officials were seeking additional fees to those prescribed for the office they held; in that distinct sort of case, the courts have generally held that public policy required the performance gratis of those services as incidents to the duties already compensated for, and have denied the claims for additional compensation, in the absence of a specific authorization therefor by law; Binford v. Robinson, 112 Tex. 84, 244 S.W. 807; Duclos v. Harris County, Tex.Com. App., 298 S.W. 417.

■ (8) It is the accepted rule also that the intent of a legislature controls in the construction of statutes providing for fees of office, just as it does in all others; not only so, but that to both such intent and the meaning of the enactment itself the usual rules of interpretation are applied; 34 Tex.Jur. 509.

(9) This court has been cited to no statute nor authoritative appellate decision in Texas providing or holding that a special officer, such as a special county judge as

so selected under our law, was expected to be left without any compensation for his work; Article 1933, supra, to again quote it, expressly provides that he "shall receive the same pay for his services as is provided by law for county judges."

■ Indeed, "the right to the compensation attached to a public office is an incident to the title to the office." 46 Corpus Juris, Officers, paragraph 233, top page 1015.

■ (10) It is true that in Duclos v. Harris County, Tex.Com.App., 298 S.W. 417, it is held that, where the amount of prescribed fees of office is in question, the smallest instead of the largest sum allowable must be preferred. But, as this court understands it, that rule was not intended to be extended to the point of requiring a construction that would prevent the payment of any compensation at all for recognized services of a named judicial officer like a special county judge; rather would the principle thus applied in State v. Moore, 57 Tex. 307, seem to be the rule in such instances:

"For it is not to be presumed that officers are to work without compensation."

■ (11) The key to the amount of compensation appellant was entitled to seems clearly to be found in the provision of Article 1933, to the effect that the special county judge "shall receive the same pay for his services as is provided by law for county judges." Since the daily salary of the regular county judge was $13.01, when measured by that standard, appellant was entitled to that sum for the 133 days he so acted as special county judge, or to a total of $1730.33.

Further discussion is deemed unnecessary, since these conclusions determine the merits of the appeal; they require that the trial court's judgment be reversed, and that appellant be here awarded a recovery of the sued-for sum of $1730.33, together with 6% per annum interest thereon from the date of January 1, 1941.

Reversed and rendered.

On Appellee's Motion for Rehearing.

■ The office of Special County Judge is statutory and temporary. There are three different methods by which title to such office may be acquired. It so happens that the Legislature mentioned what compensation was fixed to the office in connection with providing two methods of ac-

quiring title to it. R.C.S. Article 1933. The compensation is identical, as provided by statute, in connection with provision made for acquiring title to the office by gubernatorial appointment and by agreement of parties, and corresponds exactly with the compensation attached to the office of regular county judge. Id. This being so, and since the compensation attached to the office of Special County Judge is a mere incident to the title to such office, the fact that the Legislature made no mention of the compensation which was fixed to such office when they provided a method by which title thereto could be acquired by an election held by attorneys has no significance.

Motion refused.

PER CURIAM.