

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

IN BEN SHEPPERD
ATTORNEY GENERAL

September 8, 1955

Hon. Robert S. Calvert                  Opinion No. S-174
Comptroller of Public Accounts
Capitol Station                         Re: Construction of Subsec-
Austin, Texas                               tions (a) and (b) of Sec-
                                            tion 2 of Article 7065b,
                                            V.C.S., as to the appli-
                                            cation of the 1½% eva-
                                            poration and handling de-
                                            duction to the fifth cent
                                            of the gasoline tax; and
                                            construction of Section
                                            14a as to the application
                                            of the increased fuel tax
                                            on fuels used by non-
                                            passenger carrying vehicles
Dear Mr. Calvert:                           of transit companies.

        You request the opinion of this office upon three
questions stated in your letter of August 8, 1955, which we
shall answer in the order in which you have stated them in
your request.

        Your questions are, in substance, as follows:

        1.  In view of the fact that Section 1 of
Article II of House Bill 660, Chapter 404,
Regular Session of the 54th Legislature, amended
Subsection (a) of Section 2, of the motor fuel
tax law--Article 7065b, Vernon's Civil Statutes--
to increase the excise tax imposed on the first
sale, distribution or use of motor fuel from four
cents (4¢) to five cents (5¢) per gallon, but
Subsection (b) of said Section 2, (which author-
izes a deduction of the tax on 1½% of the taxable
gallonage to be thereafter apportioned among (1)
distributors, (2) wholesaler-jobbers, and (3)
retailers, for the expense of collection, ac-
counting for, and reporting the tax collected,)
cites the tax rate at 4¢ per gallon, and in view
of the fact that this subsection (b) was not
amended, will you please give me your opinion as
to whether the distributor, who is required to
collect the tax, be authorized to deduct the
on 1½% of the total taxable gallonage at 5 ce

Hon. Robert S. Calvert, page 2 (S-174)

per gallon or at 4 cents per gallon?

2. If you hold that the tax on 1½% of the total taxable gallonage at 5 cents per gallon may be deducted, will the distributor who makes the first sale and the wholesaler-jobber who makes subsequent sales of said motor fuel, be required to set up the tax on the manifest and compute the deductions to be distributed, on a basis of five cents (5¢), or on a basis of four cents (4¢)?

3. Are company automobiles, pickups and trucks operated by transit companies to supervise and maintain the conveyances transporting passengers at fixed rates, subject to the higher tax rates prescribed in subsection (a) of Section 2, and Section 14 of the law as now amended, or are they subject to the lower rates imposed by the new Section 14a?

The answer to your first question is that the distributor is authorized to deduct the tax on 1½% of the total taxable gallonage at 5 cents per gallon. The answer to your second question is "on the basis of 5 cents per gallon." The answer to your third question is: the fuel consumed in such vehicles will be subject to the higher tax rates prescribed in Subsection (a) of Section 2, and Section 14 of the law as now amended.

Our answers to your first and second questions are arrived at by what we conceive to be the intention of the Legislature and this is arrived at by the application of well known rules of statutory construction.

In Shipley v. Floydada Independent School Dist., 250 S.W. 159, (Comm. App. 1923), the court held:

"When a new section has been introduced into a law, it must be construed in view of the original statute as it stands after the amendment is introduced, and it and all the sections of the old law must be regarded as a harmonious whole, all sections mutually acting upon each other."

A similar holding is found in American Surety Co. of New York v. Axtell Co., 120 Tex. 166, 36 S.W.2d. 715 (193 wherein the court stated:

"To arrive at the intention of the Legislature, in enacting the amendment of 1927, to Art. 5160, which was the original act of the Legislature on this subject, it is the duty, of course, to look primarily to the act itself as an entirety; and to understand the legal effect of the amendment enacted by the Legislature, it must be considered in connection with the original act, and that which had been done thereunder. A particular section of an act of the Legislature, when enacted, must be construed in view of the existence of the original statute as it stands after the amendment is introduced; it and all sections of the old law must be regarded as a harmonious whole, as connected with and naturally acting upon each."

See also Cernoch v. Colorado County, 48 S.W.2d. 470 (Tex.Civ.App. 1932), and Markwell v. Galveston County, 186 S.W.2d 273 (Tex.Civ.App. 1945, error ref.). This is in accord with the general rule that all acts and parts of acts in pari materia are to be construed together. Cain v. State, 20 Tex. 355 (1857).

Another rule of construction is that, when a law is amended effect must be given to the amended law in a manner consistent with the amendment. Yett v. Cook, 115 Tex. 205, 281 S.W. 837 (1926); Mitchell v. City of Terrell, 96 S.W.2d. 556 (Tex.Civ.App. 1936, error ref.), if the acts are so inconsistent that the provisions cannot be harmonized, the provisions of prior acts in conflict with the intention of the last act are impliedly repealed. In Townsend v. Terrell, 118 Tex. 463, 16 S.W.2d. 1063 (1929), the court upheld the last of two acts, stating:

"It is well settled that repeals by implication are not favored, and that all acts and parts of acts in pari materia are to be construed as a whole and interpreted in such manner as that all may stand where such may reasonably be done. It is only where acts are so inconsistent as to be irreconcilable that a repeal by implication will be indulged. If there exists such conflict, then there is a presumption of the intention to repeal all laws and parts of laws in conflict with the clear intention of the last act. This is necessarily true where both acts cannot stand as valid enactments."

In Whittenberg v. Craven, 258 S.W. 152 (Comm. Ap 1924), the court stated the rule as follows:

"In the construction of a particular statute or in the interpretation of its provisions, all acts relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law. Such statutes, being in pari materia and relating to the same subject are to be taken together and so construed, in reference to each other, as that, if practicable, effect may be given to the entire provisions of each. The object of the rule is to ascertain and carry into effect the intention of the Legislature, and it proceeds upon the supposition that the several statutes relating to one subject were governed by one spirit and policy, and were intended to be consistent and harmonious in their several parts and provisions. If they cannot be construed so as to be consistent and harmonious in their several parts and provisions, then either the hypothesis that they relate to the same subject must be abandoned or else the later statute, in so far as it cannot be reconciled and made consistent and harmonious with the earlier, will be construed as repealing those provisions of the earlier statute between which and the provisions of the later statute irreconcilable repugnancy exists."

We think it manifest that it was the intention o the Legislature that the deduction of 1-$\frac{1}{2}$% be computed on the actual tax rate as set out in the manifest, namely the 5 cents, and that the reference in the unamended Subsectic (b) to the prior tax rate of 4 cents per gallon should be disregarded. It is necessary to construe Section 1 of Article 2 of House Bill 660, amending Subsection (a) of Section 2 of the Motor Fuel Tax Law, Article 7065b, V.C.S. to avoid a conflict with the unamended section which refer to the 4 cents per gallon, if possible. We do not regard the apparent conflict as material. The manifest will bear the 5 cent tax rate, and the 1-$\frac{1}{2}$% deduction should be allc upon this.

With respect to your third question, we think it was the intent of the Legislature to accord the lower tax rate to transit companies in the operation of their facili ties actually used in the transportation of passengers in incorporated cities and towns under a franchise from such cities or towns which regulate the rates. We think the

automobiles and pickup trucks used to supervise and maintain the facilities of transportation companies do not come under the provisions of the statute according a lower tax rate. Such automobiles and pickup trucks are not actually a part of the facilities used for transporting passengers for hire under a franchise and under rates fixed by such city or town. No fares are charged as to the use made of such automobiles and pickup trucks.

## SUMMARY

Under the motor fuel tax law, as amended, Article 7065b, V.C.S., a distributor is authorized to deduct the tax on $1\frac{1}{2}\%$ of the total taxable gallonage at 5 cents per gallon. The distributor who makes the first sale and the wholesaler-jobber who makes subsequent sales of motor fuel will be required to set up the tax on the manifest and compute the deductions to be distributed to the purchasers on a basis of 5 cents per gallon.

Company automobiles, pickups and trucks operated by transit companies to supervise and maintain the conveyances transporting passengers at fixed rates will be subject to the higher tax rates prescribed in Subsection (a) of Section 2, and Section 14 of the law as now amended.

APPROVED:

Davis Grant
Reviewer

L. W. Gray
Reviewer

Will D. Davis
Special Reviewer

John Atchison
Acting First Assistant

John Ben Shepperd
Attorney General

Yours very truly,

JOHN BEN SHEPPERD
Attorney General

By L. P. Lollar

L. P. Lollar
Assistant